In re David D. THOMASSON & Joanne R. Thomasson, Debtors.

James & Nancy WOLFE, Plaintiffs,

v.

David D. THOMASSON & Joanne R. Thomasson, Defendants.

Bankruptcy No. 83–00633–S–2–11.

Adv. No. 83–1143–S–2–11.

United States Bankruptcy Court,
W.D. Missouri, S.D.

Oct. 27, 1986.

Mark Gardner, Springfield, Mo., for plaintiffs.

Fred Charles Moon, Springfield, Mo., for defendants.

## MEMORANDUM OPINION AND ORDER

FRANK W. KOGER, Bankruptcy Judge.

This adversary action comes before the Court to be ruled on a single point, namely are plaintiffs secured by virtue of a lien created by their state court judgment, or are they unsecured. The parties have stipulated to all other facts and present an (as yet) unruled by the Bankruptcy Courts of the Western District of Missouri issue that necessitates the following opinion:

Briefly stated, the underlying facts are as follows. Plaintiffs obtained judgment against debtors/defendants (hereinafter defendants), on or about September 23, 1982, in the Circuit Court of Greene County, Missouri, for $33,197.00 with interest at 12% compounded quarterly. The petition was

grounded in fraud and the defendants entered into a payment and judgment stipulation and paid some $3,000.00 to plaintiffs as of the judgment date. By virtue of Mo. R.S. Section 511.360, that judgment became a lien on all real estate of defendants in Greene County, Missouri, from rendition date for three years until September 22, 1985.[1] Defendants filed their petition for reorganization under Chapter 11 on or about March 10, 1983. Obviously the preference provisions of Section 547 of the Bankruptcy Code did not operate against said lien because more than ninety (90) days had passed from the judgment date to the date of filing. Prior to September 22, 1985, the plaintiffs did not seek permission of this Court to revive the judgment as provided in Section 511.370 Mo.R.S. by issuing a Writ of Scire Facias.[2]

Missouri courts have held that following the mandate of Section 511.370 Mo.R.S. constitutes exclusive mode of reviving the judgment. (See *Papenberg v. Papenberg*, 289 S.W.2d 468 (Mo.App.1956)). Likewise, Missouri courts have held that the mandates of Section 511.430 Mo.R.S. by revival of the judgment through issuance and service of the Scire Facias on the defendant is the exclusive mode to continue the lien on real estate for another three year period from the date of the revival (see *Longlett v. Eisenberg*, 222 Mo.App. 805, 10 S.W.2d 317 (1928), *Armstrong v. Crooks*, 83 Mo. App. 141, and *Holt v. Mansfield*, 83 Mo. App. 191).[3] By reason of the foregoing, defendants argue that since the judgment was not revived, the lien was not renewed, and therefore at 12:01 A.M. on September 23, 1985, plaintiffs' real estate lien, like Cinderella's coach, turned back into a pumpkin and plaintiffs were relegated to the ashes and cinders of an unsecured creditor.

Plaintiffs do not agree and have cited to the Court the case of *In re Pennington*, 47 B.R. 322 (Bkr.E.D.Va.1985) and *In re Catamount Dyers, Inc.*, 50 B.R. 788, (Bkr.D.Vt. 1985). The former case held that a statutory lien on personal property did not expire upon the return date of a writ of fieri facias where bankruptcy intervened between the creation of the lien by the issuance of the writ and its return date. Citing an unpublished opinion from the District Court of the Eastern District of Virginia, the Court determined that

"... if a creditor's lien is extant under state law prior to commencement of the bankruptcy, the lien remains viable even if under the terms of the law creating the lien it would expire absent some action of the creditor. For example, in the instant case, the creditor would not be obliged to seek a new writ of fieri facias to keep the lien in effect. Thus the lien of fieri facias remains viable during the pendency of the bankruptcy proceedings". Id. p. 327.

The latter case dealt with the effect of a bankruptcy filing on the passage of five years from the previous filing of a UCC1 that by law would have otherwise expired subsequent to the bankruptcy filing but prior to the date of the hearing to determine secured status. The Court there held that it was the status (secured or unse-

---

1. Mo.R.S. Section 511.360 provides:

"The lien of a judgment or decree shall extend as well to the real estate acquired after the rendition thereof, as to that which was owned when the judgment or decree was rendered. Such liens shall commence on the day of the rendition of the judgment and shall continue for three years, subject to be revived as herein provided; but when two or more judgments or decrees are rendered at the same term, as between the parties entitled to such judgments or decrees, the lien shall commence on the last day of the term at which they are rendered".

2. Mo.R.S. Section 511.370 provides:

"The plaintiff or his legal representative may, at any time within ten years, sue out a scire facias to revive a judgment and lien; but after the expiration of ten years from the rendition of the judgment, no scire facias shall issue".

3. Mo.R.S. Section 511.430 provides:

"If upon the service of the scire facias or publication as aforesaid, the defendant, or any of his creditors, do not appear and show cause against reviving the judgment or decree, the same shall be revived, and the lien continued for another period of three years; and so on, from time to time, as often as may be necessary".

cured) at the instant of the bankruptcy filing that determined the status throughout and the lien survived to the end of the bankruptcy proceeding. Ibid. p. 790. The Court cited a number of cases including an Act case decided by the United States Supreme Court in 1931 and gives a partial quote from that opinion. The entire quote from that opinion is as follows:

"Thus, while valid liens existing at the time of the commencement of a bankruptcy proceeding are preserved, it is solely within the power of a court of bankruptcy to ascertain their validity and amount and to decree their method of liquidation". *Isaacs v. Hobbs Tie & Timber Co.*, 282 U.S. 734, 51 S.Ct. 270, 75 L.Ed. 645 (1931).

■ Although that decision predates the automatic stay of the 1978 Act by some 67 years, this Court apprehends it to be the law under the Act and to continue to be the law under the Code. The St. Louis Court of Appeals (now Missouri Court of Appeals-Eastern District) in 1966 held:

"If a valid lien exists it presents a different situation and where the judgment remains unpaid the adjudication in bankruptcy is no bar to the continuation of the lien". *Pruellage v. The DeSeaton Corporation*, 407 S.W.2d 36, l.c. 39.

Clearly then before the enactment of the 1978 Bankruptcy Code, the lien survived and we are now left to determine if any change has occurred. Under the 1978 Code, Section 362 creates the automatic stay. That stay operates to stay all entities from (in part):

1. the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that arose before the commencement of the case ...

2. the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case ...

    .     .     .     .     .

4. any act to create, perfect, or enforce any lien against property of the estate;

Although by somewhat strained construction it can be argued that renewal of a judgment lien may not constitute an "act to create, perfect, or enforce any lien against property" and that such action is not "the enforcement against the debtor or against property of the estate, of a judgment", such construction surely founders on the rock of "the commencement or *continuation including the issuance* or employment *of process*, of a *judicial*, administrative or other *action* ". To renew the lien clearly requires the continuation of a judicial action and must by definition employ process and the issuance of process. A writ of scire facias is process. The writ must be issued and served to either revive the judgment or renew the lien. It must be held then that plaintiff was stayed by the automatic stay from renewing the lien.

■ It must also be held then that Section 108(c) is applicable. In pertinent part that section says:

"... if applicable nonbankruptcy law ... fixes a period for ... continuing a civil action in a court other than a bankruptcy court on a claim against the debtor, ... and such period has not expired before the date of the filing of the petition, then such period does not expire until ... (2) 30 days after notice of the termination or expiration of the stay ..."

In the present case the filing of the petition occurred March 10, 1983. The creation of the automatic stay occurred March 10, 1983. The time to issue the writ of scire facias to renew the lien expired September 23, 1985 (if the lien was to be continuous). The automatic stay was in effect and has not yet expired or terminated Ergo, q.e.d., or what have you, it follows as night follows day then that the period to renew the lien has not yet expired and the lien today is alive and well.

While forced to this conclusion by virtue of the existing bankruptcy law, the Court must state that it dislikes the possible effects of such a holding. Obviously, it creates a situation wherein a potential creditor in searching the recorder's or clerk's office

for the title to real estate or the UCC officer's records for liens on personal property may be misled to its ultimate detriment. Carried to its extreme, it may well vitiate the state law as to mechanic's lien time tables. Nevertheless, the Court finds no way it can rule in any other fashion or interpret Section 108(c) of the Code and Section 362 of the Code any differently.

The Court fervently hopes that counsel for secured creditors will follow better practice and obtain permission from the Bankruptcy Court to avoid the stay for the limited purpose of renewing judgments or renewing UCC1 filings or filing mechanics liens in all future cases and then proceed to fulfill the time requirements set by state statute. Such conduct will avoid the possibility of their clients losing some substantial right or rights as well as obviating the necessity of some Bankruptcy Judge having to write a long and unpalatable opinion.

For the foregoing reasons plaintiffs are determined to be secured creditors and their Complaint as to dischargeability is MOOT and is DISMISSED WITHOUT PREJUDICE.